## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | |
| LEONID SHIFRIN, ) | |
| ) | Case No. 12-22722 MER |
| Debtor. ) | Chapter 7 |
| ) | |
| ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |
| ) | |
| HARVEY SENDER, Chapter 7 Trustee ) | |
| ) | Adv. Proc. No. 14-01305-MER |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| AMERICAN EXPRESS COMPANY; AMERICAN ) | |
| EXPRESS TRAVEL RELATED SERVICES ) | |
| COMPANY, INC.; AMERICAN EXPRESS ) | |
| CENTURION BANK, ) | |
| ) | |
| Defendants. | |

## FIRST AMENDED COMPLAINT

Harvey Sender, as Chapter 7 Trustee, by and through counsel, for his First Amended

Complaint (this "First Amended Complaint"), states:

### I.    PARTIES, JURISDICTION AND VENUE

1.    On June 17, 2012 (the "Petition Date"), the Debtor Leonid Shifrin (the "Debtor")

commenced a voluntary proceeding under Chapter 7 of title 11 of the United States Code (the

"Bankruptcy Code").

2.    Plaintiff Harvey Sender is an individual and the duly appointed Chapter 7 trustee

(the "Trustee") in the bankruptcy case of the Debtor, Court File No. 12-22722 MER (the

"Bankruptcy Case").   The Trustee was appointed in the Debtor's Bankruptcy Case on the Petition Date.

3.      Defendants American Express Company and American Express Travel Related Services Company, Inc. are corporations organized under the laws of the State of New York with a principle office located at 200 Vesey Street, New York, New York 10285. Defendant American Express Centurion Bank is a corporation organized under the laws of the State of Utah with a principle office located at 4315 South 2700 West, Salt Lake City, Utah  84184 and is registered to do business in the State of Colorado (collectively, the "Defendant").   The Defendant's registered agent is The Corporation Company, 1675 Broadway, Suite 1200, Denver, Colorado 80202.

4.      The United States Bankruptcy Court for the District of Colorado (this "Court") has jurisdiction under 28 U.S.C. §§ 157(a) and (b)  and §§ 1334(a) and (b), and the automatic referral of bankruptcy matters from the United States District Court for the District of Colorado under D. Colo. L. Civ. R 84.1.

5.      Venue is proper in this Court under 28 U.S.C. § 1409.

6.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (E), (H), and/or (O).

## II.      GENERAL ALLEGATIONS

7.      This action arises out of efforts of the Debtor to fraudulently transfer assets out of the Debtor's possession (directly and through the Debtor's Companies) and into the possession of the Defendant in an intentional effort to hinder, delay and defraud creditors of the Debtor, including but not limited to the State of Colorado and the United States of America.

2

8.      On September 21, 2012, the Denver County District Court held that the assets and property of the following companies are the property of the Debtor, including all trade names and doing business names:  Glasgow Inc. ("Glasgow"); Glasgow Sales Inc. ("Glasgow Sales"); Colonial Financial Inc. ("Colonial Financial"); USWSL Group Inc. ("USWSL"); USXLP Inc. ("USXLP"); 67th Avenue Inc. ("67th Avenue") and 67th Inc.  ("67th Inc.") (all of which are collectively referred to herein as the "Debtor's Companies"), the terms of which were set forth in a written order dated October 8, 2012.

9.      At all times relevant to the Trustee's claims, the Debtor's Companies served as alter-egos of the Debtor.  On September 21, 2012, the Denver County District Court specifically found and adjudicated as a matter of law that the Debtor's Companies are, in fact, property of the Debtor.

10.      Pursuant to the claims set forth herein, the Trustee seeks entry of an order avoiding and recovering the fraudulent transfers of monies and other assets of the Debtor (directly and through the Debtor's Companies) to the Defendant, both in its capacity as initial transferee of the transfers and, alternatively, as the immediate or mediate transferee of such transfers; disallowance of any claim filed by Defendant in these bankruptcy proceedings; and voiding all post-Petition transfers of property of the estate to the Defendant.

### III.      THE FRAUDULENT TRANSFERS

**A.      The Debtor's Pre-Petition Tax Fraud Case.**

11.      Prior to the Petition Date, Debtor was the defendant in a federal criminal tax fraud case in the United States District Court for the District of Colorado, Court File No. 10-cr-00215 (the "Tax Fraud Case").

12.     The Debtor pleaded guilty in March 2011 to one count of filing a false income tax return.

13.     The Debtor was sentenced on September 20, 2012.

14.     On January 24, 2013, an Amended Judgment was entered in the Tax Fraud Case in favor of the United States and against the Debtor in the amount of $873,340.

15.      During the Tax Fraud Case, the Debtor stipulated and agreed that beginning in 2002 the Debtor began to form corporations and to receive payments and income in the name of either the corporations or his father, Mark Shifrin, and titled assets and bank accounts in names other than his own, including in the names of corporations and his father.

**B.      The Debtor's Pre-Petition CCPA Enforcement Action.**

16.     Prior to the Petition Date, the Debtor was a defendant in a state court civil action brought by the State of Colorado alleging violations of the Colorado Consumer Protection Act (the "CCPA Action").

17.     The State of Colorado filed the CCPA Action on February 14, 2008.

18.     On April 20, 2011, the Denver County District Court entered a money judgment against the Debtor and in favor of the State of Colorado.  The judgment also was entered against Mortgage Planning and Lending Specialists, Ltd., Wholesale Mortgage Lending, LLC, Shifrin, Inc., and CBA Inc. (the "CCPA Co-Defendants").

19.     The Denver County District Court found that the Debtor was the "leader, organizer, owner and/or boss of all operations" of the CCPA Co-Defendants, and "the evidence clearly and convincingly demonstrated that the Debtor was the directing force of the operation and had control or input into every aspect of the scheme."

4

DOCS-#4369462-v1

20.     In addition to the money judgment entered in favor of the State of Colorado, the Denver County District Court enjoined the Defendant from participating in the mortgage lending and mortgage brokerage industries.

21.     The State of Colorado and the United States of America are both creditors of the Debtor, as that term is defined under Colorado's Uniform Fraudulent Transfer Act ("CUFTA"), Colorado Revised Stat. § 38-8-102.

**C.      The Debtor Utilizes the CCPA Defendants as Alter Egos and Forms the Debtor's Companies to Continue the Debtor's Business Operations and Financial Affairs During the CCPA Action and to Shield Assets and Avoid the Judgments Entered in Favor of the State of Colorado and the United States in the Tax Fraud Case.**

22.     After the Debtor was named a defendant in the CCPA Action in 2008, from 2009 through the Petition Date, the Debtor caused the Debtor's Companies to be formed and/or registered in the State of Colorado and set up numerous new trade names for the Debtor's Companies, each of which had a common registered principal place of business at 8400 E. Crescent Parkway, #150, Greenwood Village, CO 80111 or at the residence of the Debtor's mother or father.   Specifically, the Debtor's Companies (and their respective trade names) were formed and/or registered after the commencement of the CCPA Action and during the Tax Fraud Case as follows:

| Entity | CO Formation / Registration Date | Registered Agent | Principal Place of Business |
|---|---|---|---|
| Glasgow Inc. d/b/a Colonial Financial Inc. | 12/16/2009 | Sofia Shifrin | 8400 E. Crescent Parkway, #150, Greenwood Village, CO<br><br>11692 E. Baltic Place, Aurora, CO (Sofia Shifrin's residence) |

5

| Entity | CO Formation / Registration Date | Registered Agent | Principal Place of Business |
|---|---|---|---|
| Glasgow Sales Inc. | 8/29/2011 | Eric Sheldon | 8400 E. Crescent Parkway, #150, Greenwood Village, CO |
| USWSL Group Inc. d/b/a 5280 Motors Inc. | 4/2/2007, registered to do business as 5280 Motors Inc. on 11/8/2011 | Mark Shifrin | 8400 E. Crescent Parkway, #150, Greenwood Village, CO<br><br>1624 S. Fairplay St., Aurora CO (Mark Shifrin's residence) |
| USXLP Inc. d/b/a Nice Neighbor Movers Inc. | 2/4/2009 | Sofia Shifrin | 11692 E. Baltic Place, Aurora, CO (Sofia Shifrin's residence) |
| 67th Avenue Inc. d/b/a 67th Avenue Movers Inc. / Neighbors Moving / Father and Sons Moving / Neighbors Moving | 1/5/2010 | Jason Price / Sofia Shifrin | 8400 E. Crescent Parkway, #150, Greenwood Village, CO<br><br>5303 E. 47th Ave., Unit N., Denver CO |
| 67th Inc. d/b/a 67th Avenue Movers Inc., 67th Avenue Logistics Inc., Father and Sons Moving, Neighbors Moving | 12/1/2009 | Qilly Yankovich (Shifrin) / Sofia Shifrin | 8400 E. Crescent Parkway, #150, Greenwood Village, CO<br><br>11692 E. Baltic Place, Aurora, CO (Sofia Shifrin's residence) |

23.     Glasgow, which also does business under the name Colonial Financial, is a Colorado corporation with a current principal business address of 11692 East Baltic Place, Aurora, Colorado  80014 (Sofia Shifrin's home address).  On May 20, 2010, Qilly Shifrin filed Articles of Incorporation for Glasgow with the Colorado Secretary of State.  Qilly Shifrin is the president of Glasgow,  Mark Shifrin is the Secretary, and Sofia Shifrin is a Director.  Debtor is the Vice President of Glasgow.  Sofia Shifrin was, and remains, the registered agent of Glasgow. On May 20, 2010, Glasgow registered the trade name of Colonial Financial, Inc.

6

24. Glasgow Sales is a Colorado corporation that was formed on August 29, 2011, with a principal address of 8400 E. Crescent Parkway, #150, Greenwood Village, CO 80111. Glasgow Sales does business as American Home Funding, Inc. Eric Sheldon was the registered agent of Glasgow Sales, Inc. during the time period that the company was in good standing with the Colorado Secretary of State.

25. USWSL, which also does business as 5280 Motors Inc., is a Nevada corporation with a principal business address of 8400 E Crescent Pkwy, #150 Greenwood Village, CO. Mark Shifrin was the registered agent of USWSL during the time period that the company was in good standing with the Colorado Secretary of State. Debtor was the Director and Treasurer of USWSL. Debtor has held himself out as the president, vice president, and a principal of USWSL. Filing documents identify Debtor's father as the president of USWSL and Debtor's mother as the Secretary. The trade name 5280 Motors Inc. was registered with the Colorado Secretary of State on November 8, 2011.

26. USXLP, which also does business as Nice Neighbor Movers Inc., is a revoked Nevada corporation with a principal address of 11692 East Baltic Place, Aurora, Colorado 80014 (Sofia Shifrin's home address). Sofia Shifrin was the original registered agent of USXLP during the time period that the company was in good standing with the Colorado Secretary of State. Debtor is the President and Director of the corporation. Mark Shifrin is the Secretary. Debtor has held himself out as the president, director, registered agent, and creator of USXLP. On February 4, 2009, USXLP filed a Statement of Foreign Entity Authority with the Colorado Secretary of State identifying Debtor as the registered agent for the company. The trade name

7

Nice Neighbor Movers Inc. was registered with the Colorado Secretary of State on January 29, 2011.

27.     Debtor also formed USXLP, Inc., in Florida, which during the relevant time period maintained a principal place of business in Florida but had a mailing address in Colorado at an address used by Debtor.   On April 19, 2011, Debtor signed and filed a For Profit Corporation Amended Annual Report with the Florida Secretary of State as the Secretary of USXLP.  This document lists Debtor as Secretary, Sofia Shifrin as an officer, Qilly Shifrin as an officer and treasurer, and Jason Price as President.  Sofia Shifrin filed Articles of Dissolution on August 28, 2012.   The USXLP Nevada Corporation, registered to do business in Colorado, and the USXLP Florida Corporation are collectively referred to herein as "USXLP."

28.     67th Avenue, which does business as 67th Avenue Movers Inc., Neighbors Moving and Father and Sons Moving, is a revoked Nevada corporation with a principal address of 5303 East 47th Avenue, Unit N, Denver, Colorado 80216.    Debtor formed the company in Nevada in December 2006 with himself as treasurer, Mark Shifrin as Director, Sofia Shifrin as president, and Qilly Shifrin as secretary.  During the relevant time period, the registered agent was either Jason Price or Sofia Shifrin.

29.     67th Inc., which does business as 67th Avenue Movers Inc., Neighbors Moving, Father and Sons Moving, and 67th Avenue Logistics, Inc., is a Colorado corporation with a principal address of 8400 E Crescent Pkwy, #150 Greenwood Village, CO.  67th Inc. was incorporated by Qilly Shifrin in 2009.  During the time period that it was an active company, the principal address was 8400 E. Crescent Parkway, Suite 150, Greenwood Village, CO  80111, or 11692 E. Baltic Place, Aurora Colorado (Sofia Shifrin's home address).  Qilly Shifrin and Sofia

8

Shifrin were the registered agents during the time period that the company was in good standing with the Colorado Secretary of State.

30.     On information and belief, at all times relevant to the Trustee's claims, the Debtor's Companies and the CCPA Co-Defendants served as the alter-egos of the Debtor, were under the control of the Debtor, and were formed and used by the Debtor to conceal the Debtor's assets and financial affairs from the Debtor's creditors.

31.     The Debtor extensively, and inextricably, commingled millions of dollars of the Debtor's Companies and the CCPA Co-Defendants among accounts titled in the name of the Debtor's Companies and the CCPA Co-Defendants.  The Debtor and others used accounts in the name of the Debtor's Companies and the CCPA Co-Defendants for personal living expenses.

32.     The analyzed banking records of the Debtor's Companies and the CCPA Co-Defendants confirm there was total disregard for the corporate form of the Debtor's Companies and the CCPA Co-Defendants.

33.     By way of example, during the one year prior to the Petition Date, the Debtor caused over 1,400 inter-company transfers in excess of $5,000,000 to occur between at least 21 accounts in the names of the Debtor's Companies.   In addition, post-petition, the Debtor (or individuals acting at his direction or on his behalf) continued the disregard of corporate form and caused at least 170 inter-company transfers in excess of $1,500,000 to occur between at least 13 accounts in the names of the Debtor's Companies.

34.     The Trustee is aware of at least 115 bank accounts that, at some point in time, have been affiliated with the Debtor, his family members, and entities owned and controlled by the Debtor, including but not limited to the Debtor's Companies and the CCPA Defendants.  The

9

Trustee further analyzed the activity pre-and post-petition in 57 of these accounts.  In the one-year pre-petition and post-petition more than $18 million was, collectively, deposited into and withdrawn from, these 57 accounts.

35.     On information and belief, corporate records of the Debtor's Companies and the CCPA Co-Defendants were not generated or maintained, and each of the Debtor's Companies and the CCPA Co-Defendants served as mere shells to conceal the financial activities, assets and funds of the Debtor.

36.     The Trustee issued subpoenas for the books and records of each of the Debtor's Companies.  As of the date of this First Amended Complaint no records have been produced to account for the account activity of accounts titled in the names of the Debtor's Companies or the transfers identified herein received by the Defendant.

37.     The manner by which the Debtor caused the Debtor's Companies to be formed, owned and operated by his family members allowed and facilitated the Debtor's ability to control and misuse the Debtor's Companies for his personal purposes and personal gain.

38.     By way of example, the Debtor titled real estate in the name of Glasgow and his parents, Mark and Sofia Shifrin, and then collected rental income from those properties, including but not limited to properties located at 24441 E. Glasgow Circle in Aurora, Colorado; 24411 E. Glasgow Circle in Aurora, Colorado; and 38 Grey Jay Lane in Breckenridge, Colorado, a luxury rental property.

39.     The Defendant's family members Sofia Shifrin, Mark Shifrin, and Qilly Shifrin were not involved in the management or operations of the Debtor's Companies and were used by

10

the Debtor as registered agents as part of the Defendant's scheme to conceal assets from his creditors.

40.    Sofia Shifrin has testified that she cleans houses and lives off of social security. She also testified that she was an officer of Glasgow and 67th Avenue, but that she did not personally have any involvement with the operations of Glasgow.

41.    Mark Shifrin has testified that he lives off social security and amounts earned as a delivery driver.

42.    Qilly Shifrin testified that since 2006 Debtor was the principal income provider for their household.  Qilly Shifrin testified that Debtor told her that he could not have bank accounts in his own name but never told her why.  Qilly Shifrin filed documents for various business entities with the Colorado Secretary of State at Debtor's direction.  Qilly Shifrin testified that before Debtor was incarcerated in November 2012, she would create weekly household budgets and Debtor would give her money for household expenses.  Debtor directed Qilly Shifrin to make payments on real property titled in the name of the Debtor's Companies, and his mother and father from funds in her personal bank account that were provided to her by Debtor.  Qilly Shifrin also was a signer on JP Morgan Chase bank accounts for USWSL and USLXP, at Debtor's direction.  Debtor wrote checks to his wife from accounts in the name of Debtor's Companies, which she would then cash.

**D.    The Debtor Violated the Injunction Entered in the CCPA Action and the Denver County District Court Found that the Debtor's Companies Were the Property and Assets of the Debtor.**

11

43.     On May 16, 2012, the State of Colorado filed a Motion for Civil Penalties in the CCPA Action to enforce the terms of the injunction entered by the Denver County District Court (the "Motion for Civil Penalties").

44.     One month after the State of Colorado filed the Motion for Civil Penalties, the Debtor commenced the Bankruptcy Case on June 17, 2012.  The Debtor responded to the Motion for Civil Penalties by arguing that all collection efforts of the State of Colorado were stayed pursuant to 11 U.S.C. § 362(a).  The Denver County District Court rejected the Debtor's arguments.

45.     On September 21, 2012, the Denver County District Court held that the Debtor violated the injunction entered in the CCPA Action and entered an "Order and Amendment to Judgment and Asset Freeze" that expressly found that the Debtor had "access to and control over the assets" of the Debtor's Companies.

46.     The Denver County District Court expressly found that the assets and property of the Debtor's Companies (including all trade names and doing business names) and joint accounts of Mark Shifrin, Sofia Shifrin, and Qilly Shifrin with the Debtor are the property of the Debtor.

47.     To prevent the disposition of assets over which the Debtor had control, the court enjoined Debtor and the Debtor's Companies, and the Debtor's family members from transferring any asset from those joint accounts.  The Denver County District Court further ordered that the Debtor's accounts, the accounts of the Debtor's Companies, and all jointly held accounts by the Debtor, the Debtor's Companies, and Mark Shifrin, Sofia Shifrin, and Qilly Shifrin, be frozen as of September 21, 2012.

**E.     The Pre-Petition Fraudulent Transfers to the Defendant**

48.     Prior to the Petition Date, the Debtor used the Debtor's funds and funds of the Debtor's Companies to pay the debts of others, including financial obligations owed to the Defendant.

49.     On information and belief, the Debtor transferred monies to the Defendant for the purpose of satisfying the obligations of others, including his family members, for the purpose of avoiding detection of those funds and concealing those assets and monies of the Debtor from the Debtor's creditors.

50.     On information and belief, the Defendant was not a creditor of the Debtor with respect to the transactions at issue in this First Amended Complaint or the transfers that the Trustee seeks to avoid.

51.     As set forth on Exhibit 1, within one year prior to the Petition Date, the Debtor intentionally and fraudulently transferred $259,804.24 to the Defendant (which transfers are collectively referred to herein as the "Pre-Petition Fraudulent Transfers").

52.     On information and belief, the Debtor received no value or any other consideration from Defendant on account of the Pre-Petition Fraudulent Transfers.

53.     On information and belief, the Defendant received significant transfers from the Debtor and the Debtor's Companies and/or the CCPA Defendants in addition to the Pre-Petition Fraudulent Transfers identified on Exhibit 1 hereto.  The Trustee reserves all rights with respect to all additional fraudulent transfers received by the Defendant from the Debtor and the Debtor's Companies and/or the CCPA Defendants prior to the Petition Date and seeks to recover herein

13

all monies received by the Defendant, prior to the Petition Date, that are recoverable under applicable law, including but not limited to the Pre-Petition Fraudulent Transfers.

**F.    The Post-Petition Fraudulent Transfers to the Defendant**

54.    On information and belief, after the Petition Date, the Debtor continued, or caused to be continued, the transfer of monies of the Debtor to the Defendant for the purpose of satisfying the financial obligations of others, including his family members.

55.    The Debtor engaged in post-petition transfers of monies and assets of the estate to the Defendant.

56.    The Debtor opened or directed others to open more than twenty bank accounts after the Petition Date to facilitate the ongoing concealment of assets of the Debtor and to avoid the terms of the Denver County District Court's Order and Amendment to Judgment and Asset Freeze.

57.    An itemization of accounts that were opened post-petition (collectively referred to herein as the "Post-Petition Accounts") and were affiliated with the Debtor and the Debtor's Companies is set forth below:

| Account | Accountholder Name | Date Opened | Authorized Signers |
|---|---|---|---|
| Wells Fargo Acct. No. 3677 | 5280 Inc. | 11/23/12 | Mark Shifrin |
| Wells Fargo Acct. No. 3685 | 5280 Inc. | 11/23/12 | Mark Shifrin and David Price |
| Wells Fargo Acct. No. 3696 | 5280 Inc. | 11/23/12 | Mark Shifrin and Doug Winkler |
| Wells Fargo Acct. No. 3500 | Glasgow Inc. | 9/22/12 | Sofia Shifrin and Oai Luong |
| Wells Fargo Acct. No. 3230 | Glasgow Inc. | 10/23/12 | Sofia Shifrin and Oai Luong |
| Wells Fargo Acct. No. 4097 | Glasgow Inc. d/b/a Colonial Financial | 10/23/12 | Sofia Shifrin and Oai Luong |
| Wells Fargo Acct. No. 1558 | Mark Shifrin | 10/20/12 | Mark Shifrin |

14

| Account | Accountholder Name | Date Opened | Authorized Signers |
|---|---|---|---|
| Wells Fargo Acct. No. 3225 | Mark Shifrin | 10/20/12 | Mark Shifrin |
| Wells Fargo Acct. No. 1358 | USWSL | 9/25/12 | Mark Shifrin |
| Wells Fargo Acct. No. 1366 | USWSL | 9/25/12 | Mark Shifrin and Doug Winkler |
| Wells Fargo Acct. No. 4621 | USWSL | 9/25/12 | Mark Shifrin |
| Wells Fargo Acct. No. 4639 | USWSL | 9/25/12 | Mark Shifrin |
| Wells Fargo Acct. No. 4647 | USWSL | 9/25/12 | Mark Shifrin |
| Wells Fargo Acct. No. 3743 | USWSL | 10/19/12 | Mark Shifrin |
| Wells Fargo Acct. No. 8791 | USWSL | 10/19/12 | Mark Shifrin |
| Vectra Bank Acct. No. 6097 | 67th Ave. Inc. d/b/a Father & Sons d/b/a Neighbors Moving | 9/24/12 | Sofia Shifrin Eric Sheldon Kris Martinez |
| TCF Bank Acct. No. 3780 | Father & Sons Inc. | 11/8/12 | Kris Martinez Sofia Shifrin Michael Sarris |
| TCF Bank Acct. No. 3783 | Movers Connection | 10/23/12 | Kris Martinez Sofia Shifrin Michael Sarris |
| TCF Bank Acct. No. 0943 | USWSL Group Inc. | 9/22/12 | Mark Shifrin |
| TCF Bank Acct. No. 0942 | USWSL Group Inc. | 9/22/12 | Mark Shifrin |
| Bank of the West Acct. No. 9319 | Glasgow Inc. d/b/a Colonial Financial | 12/11/12 | Sofia Shifrin and Oai Luong |
| Charles Schwab Acct. No. 7054 | Mark Shifrin | 11/1/12 | Mark Shifrin |

58.     On November 24, 2012, Debtor specifically directed Kris Martinez, Mark Shifrin, and Qilly Shifrin to coordinate with David Price, Doug Winkler and Mark Shifrin to set up certain of the Post-Petition Accounts.

59.     In September 2013, the Denver District Court specifically found that following the Debtor's commencement of the Bankruptcy Case, Qilly Shifrin and Mark Shifrin had knowledge of the Asset Freeze Order and "willfully, knowingly, and intentionally flaunted that order, violated that order, and assisted Mr. Leo Shifrin in transferring funds presumptively to evade the Court's order and to evade detection of the bankruptcy trustee."

60.     The Defendant received post-petition transfers of property of the estate.

61.     On information and belief, the Debtor transferred monies to the Defendant for the purpose of satisfying the obligations of others, including his family members, for the purpose of avoiding detection of those funds and concealing those assets and monies of the Debtor from the Debtor's creditors.

62.     On information and belief, the Defendant was not a creditor of the Debtor with respect to the transactions at issue in this First Amended Complaint or the transfers that the Trustee seeks to avoid.

63.      At a minimum, the Defendant received $12,950.81 in post-petition transfers of property of the estate.  That amount is collectively referred to herein as the "Post-Petition Transfers."

64.     On information and belief, the Debtor received no value or any other consideration from Defendant on account of the Post-Petition Fraudulent Transfers.

65.     The Trustee reserves the right to pursue all additional, unauthorized, post-petition transfers of property of the estate received by the Defendant, as such additional amounts are discovered and confirmed by the Trustee, including but not limited to additional transfers received from the Post-Petition Accounts and all other accounts used by the Debtor and the Debtor's Companies after the Petition Date.

66.     The Pre-Petition Fraudulent Transfers and Post-Petition Transfers received by the Defendant, collectively, are referred to herein as the "Fraudulent Transfers."

67.     Collectively, the Defendant received at least $272,755.05 in Fraudulent Transfers from the Debtor.

16

## FIRST CLAIM FOR RELIEF
### Turnover and Accounting
### 11 U.S.C. § 542

68.　　The Trustee incorporates all of the prior allegations of this First Amended Complaint as if fully set forth herein.

69.　　Pursuant to the Denver County District Court Order, the assets and property of the Debtor's Companies, including proceeds and income generated by the Debtor's Companies, are property of the estate pursuant to Section 541 of the Bankruptcy Code.

70.　　Pursuant to 11 U.S.C. § 542, the Trustee is entitled to judgment against the Defendant directing the turnover and an accounting of all property and assets of the Debtor and the Debtor's Companies received by the Defendant.

## SECOND CLAIM FOR RELIEF
### Avoidance and Recovery of Pre-Petition Fraudulent Transfers
### 11 U.S.C. §§ 548(a)(1)(A) (Actual Fraud) and 550

71.　　The Trustee incorporates all of the prior allegations of this First Amended Complaint as if fully set forth herein.

72.　　The Pre-Petition Fraudulent Transfers were made within two years before the Petition Date.　Pursuant to 11 U.S.C. § 546(a)(1)(A), any action brought pursuant to 11 U.S.C. § 548 is timely if commenced within two years after an order for relief is entered.

73.　　The Pre-Petition Fraudulent Transfers were made with actual intent to hinder, delay or defraud the Debtor's creditors, including, without limitation, the State of Colorado and the United States of America.

17

74.     The Debtor made the Pre-Petition Fraudulent Transfers to the Defendant directly and through his alter-egos, the Debtor's Companies.

75.     The Defendant was the initial transferee of the Pre-Petition Fraudulent Transfers and, alternatively, the immediate or mediate transferee of the Pre-Petition Fraudulent Transfers.

76.     The Debtor received no value or any other consideration from Defendant on account of the Pre-Petition Fraudulent Transfers.

### THIRD CLAIM FOR RELIEF
**Avoidance and Recovery of Pre-Petition Fraudulent Transfers**
**11 U.S.C. §§ 548(a)(1)(B) (Constructive Fraud) and 550**

77.     The Trustee incorporates all of the prior allegations of this First Amended Complaint as if fully set forth herein.

78.     The Pre-Petition Fraudulent Transfers were made within two years before the Petition Date.  Pursuant to 11 U.S.C. § 546(a)(1)(A), any action brought pursuant to 11 U.S.C. § 548 is timely if commenced within two years after an order for relief is entered.

79.     The Debtor received less than reasonably equivalent value in exchange for the Pre-Petition Fraudulent Transfers.

80.     The Debtor was either insolvent on the date of the Pre-Petition Fraudulent Transfers, or was about to engage in business or transactions for which the remaining property of the Debtor was unreasonably small and that the Debtor believed that he could not pay his debts as they became due as a result of the Pre-Petition Fraudulent Transfers, or intended to incur, or believed that the Debtor would incur, debts beyond the Debtor's ability to pay such debts as they matured.

18

81.      The Debtor made the Pre-Petition Fraudulent Transfers to the Defendant directly and through his alter-egos, the Debtor's Companies.

82.      The Defendant was the initial transferee of the Pre-Petition Fraudulent Transfers and, alternatively, the immediate or mediate transferee of the Pre-Petition Fraudulent Transfers.

83.      The Debtor received no value or any other consideration from Defendant on account of the Pre-Petition Fraudulent Transfers.

### FOURTH CLAIM FOR RELIEF
### Avoidance of Post-Petition Transfers
### 11 U.S.C. §§ 549(a) and 550

84.      The Trustee incorporates all of the prior allegations of this First Amended Complaint as if fully set forth herein.

85.      Pursuant to 11 U.S.C. § 549(d), any action brought pursuant to 11 U.S.C. § 549 is timely if commenced within two years of the date of the transfer sought to be avoided.

86.       After the Petition Date and the commencement of the Bankruptcy Case, the Defendant received unauthorized transfers of property of the Debtor.

87.       The Bankruptcy Court did not authorize the Post-Petition Transfers.

88.      The Post-Petition Transfers were not authorized by the provisions of the Bankruptcy Code.

89.      The Debtor made the Post-Petition Transfers to the Defendant directly and through his alter-egos, the Debtor's Companies.

90.      The Defendant was the initial transferee of the Post-Petition Transfers and, alternatively, the immediate or mediate transferee of the Post-Petition Transfers.

19

91.     The Debtor received no value or any other consideration from Defendant on account of the Post-Petition Fraudulent Transfers.

### FIFTH CLAIM FOR RELIEF
**Avoidance and Recovery of Fraudulent Transfers**
**11 U.S.C. §§ 544(b), 550 and CUFTA (Actual Fraud)**

92.     The Trustee incorporates all of the prior allegations of this First Amended Complaint as if fully set forth herein.

93.     The Pre-Petition Fraudulent Transfers and Post-Petition Transfers are collectively referred to herein as the "Fraudulent Transfers."

94.     Pursuant to Colo. Rev. Stat. § 38-8-110(1)(a), a cause of action to avoid an intentionally fraudulent transfer is timely if commenced either within four years, or, if later, within one year after the fraudulent transfer could reasonably have been discovered by the plaintiff.  Pursuant to 11 U.S.C. § 546(a)(1)(A), any action brought pursuant to 11 U.S.C. § 544 is timely if commenced within two years after an order for relief is entered.

95.     The Fraudulent Transfers were made with actual intent to hinder, delay or defraud the Debtor's creditors, including, without limitation, the State of Colorado and the United States of America.

96.     At all times material hereto, there were and are one or more creditors who held and hold unsecured claims against the Debtor that are allowable under 11 U.S.C. § 502 or that are not allowable only under 11 U.S.C. § 502(e).

97.     At a minimum, the Debtor made the Fraudulent Transfers to the Defendant identified on Exhibit 1 hereto, directly and indirectly through the Debtor's Companies, which at all times served as alter-egos of the Debtor.

20

98.     The Defendant was the initial transferee of the Fraudulent Transfers and, alternatively, the immediate or mediate transferee of the Fraudulent Transfers.

99.     The Debtor received no value or any other consideration from Defendant on account of the Fraudulent Transfers.

100.    The Fraudulent Transfers are avoidable and recoverable under 11 U.S.C. §§ 544, 550 and CUFTA, § 38-8-105(1)(a) and (1)(b); § 38-8-106(1).

**SIXTH CLAIM FOR RELIEF**
**Avoidance and Recovery of Fraudulent Transfers**
**11 U.S.C. §§ 544(b), 550 and CUFTA (Constructive Fraud)**

101.    The Trustee incorporates all of the prior allegations of this First Amended Complaint as if fully set forth herein.

102.    The Pre-Petition Fraudulent Transfers and Post-Petition Transfers are collectively referred to herein as the "Fraudulent Transfers."

103.    Pursuant to Colo. Rev. Stat. § 38-8-110(1)(a), a cause of action to avoid an intentionally fraudulent transfer is timely if commenced either within four years, or, if later, within one year after the fraudulent transfer could reasonably have been discovered by the plaintiff.  Pursuant to 11 U.S.C. § 546(a)(1)(A), any action brought pursuant to 11 U.S.C. § 544 is timely if commenced within two years after an order for relief is entered.

104.    The Debtor received less than reasonably equivalent value in exchange for the Fraudulent Transfers.

105.    The Debtor was either insolvent on the date of the Fraudulent Transfers, or was about to engage in business or transactions for which the remaining property of the Debtor was unreasonably small and that the Debtor believed that he could not pay his debts as they

21

became due as a result of the Fraudulent Transfers, or intended to incur, or believed that the Debtor would incur, debts beyond the Debtor's ability to pay such debts as they due.

106.     At all times material hereto, there were and are one or more creditors who held and hold unsecured claims against the Debtor that are allowable under 11 U.S.C. § 502 or that are not allowable only under 11 U.S.C. § 502(e).

107.     At a minimum, the Debtor made the Fraudulent Transfers to the Defendant identified on Exhibit 1 hereto, directly and indirectly through the Debtor's Companies, which at all times served as alter-egos of the Debtor.

108.     The Defendant was the initial transferee of the Fraudulent Transfers and, alternatively, the immediate or mediate transferee of the Fraudulent Transfers.

109.     The Debtor received no value or any other consideration from Defendant on account of the Fraudulent Transfers.

110.     The Fraudulent Transfers are avoidable and recoverable under 11 U.S.C. §§ 544, 550 and CUFTA, § 38-8-105 (1)(b); § 38-8-106(1).

**SEVENTH CLAIM FOR RELIEF**
**Disallowance of Claims**
**11 U.S.C. § 502(d)**

111.     The Trustee incorporates all of the prior allegations of this First Amended Complaint as if set forth fully herein.

112.     The Defendant is an entity from which property is recoverable under 11 U.S.C. §§ 544, 548, 549 and 550.

113.     The Defendant is the initial transferee of transfers avoidable under 11 U.S.C. §§ 544, 548, 549 and 550.

22

114.     The Defendant has failed to pay the amount or to turn over to the Trustee the value of any property for which the Defendant a are liable under, among other things, 11 U.S.C. §§ 544, 548, 549 and 550.

115.     Any and all claims that the Defendant may have or assert in the Debtor's Bankruptcy Case must be disallowed under § 502(d) of the Bankruptcy Code.

116.     The Trustee is entitled to judgment against the Defendant disallowing any and all claims asserted by the Defendant in the Debtor's Bankruptcy Case under § 502 of the Bankruptcy Code.

## EIGHTH CLAIM FOR RELIEF
### Unjust Enrichment

117.     The Trustee incorporates all of the prior allegations of this First Amended Complaint as if fully set forth herein.

118.     At all times relevant hereto, all funds received by the Defendant were inextricably intertwined with the Debtor's scheme to defraud his creditors and were derived from monies fraudulently obtained and concealed by the Debtor.

119.     The Defendant, as the recipient of fraudulently obtained proceeds, including the Pre-Petition Fraudulent Transfers, the Post-Petition Transfers, and the Fraudulent Transfers, has no right or legitimate claim to any monies received from the Debtor, either directly or indirectly through the Debtor's use of the Debtor's Companies.

120.      The Defendant knowingly received the monies, was unjustly enriched through its receipt of the fraudulently obtained monies to the detriment of the creditors of the Debtor, and in equity and good conscience must be required to repay the monies received.

121.    The Defendant would be unjustly enriched to the extent it is allowed to retain the monies and proceeds received from the Debtor.

122.    The Defendant must, therefore, in equity be required to disgorge all monies received from the Debtor, so as to allow the Trustee to distribute equitably any such ill-gotten gains among all creditors of the Debtor.

WHEREFORE, the Trustee respectfully requests entry of judgment on this First Amended Complaint against the Defendant as follows:

1.    On Count I – Turnover/Accounting - Accounting and Turnover, pursuant to 11 U.S.C. § 542, order an accounting and turnover of all transfers by the Debtor, directly and through the Debtor's Companies, to the Defendant;

2.    On Count II – Fraudulent Transfers (Actual Fraud), pursuant to 11 U.S.C. §§ 548(a)(1)(A), 550, and 551, (a) avoiding and preserving the Pre-Petition Fraudulent Transfers free and clear from any claimed interest of defendant, (b) directing that the Pre-Petition Fraudulent Transfers be set aside, (c) recovering such Pre-Petition Fraudulent Transfers in an amount to be determined from defendant for the benefit of the estate, and (d) recovering prejudgment and post-judgment interest, attorneys' fees, and costs from defendant;

3.    On Count III – Fraudulent Transfers (Constructive Fraud), pursuant to 11 U.S.C. §§ 548(a)(1)(B), 550(a), and 551, (a) avoiding and preserving the Pre-Petition Fraudulent Transfers free and clear from any claimed interest of defendant, (b) directing that the Pre-Petition Fraudulent Transfers be set aside, (c) recovering such Pre-Petition Fraudulent Transfers in an amount to be determined from defendant for the benefit of the estate, and (d) recovering prejudgment and post-judgment interest, attorneys' fees, and costs from defendant;

4.      On Count IV – Post-Petition Transfers, pursuant to 11 U.S.C. §§ 549, 550, and 551, (a) avoiding and preserving the Post-Petition Transfers free and clear from any claimed interest of defendant, (b) directing that the Post-Petition Transfers be set aside, (c) recovering such Post-Petition Transfers in an amount to be determined from defendant for the benefit of the estate, and (d) recovering prejudgment and post-judgment interest, attorneys' fees, and costs from defendant;

5.      On Count V – Fraudulent Transfers (Actual Fraud), pursuant to 11 U.S.C. §§ 544(b), 550(a), 551, and Colo. Rev. Stat. § 38-8-105(1)(a), (a) avoiding and preserving the Fraudulent Transfers free and clear from any claimed interest of defendant, (b) directing that the Fraudulent Transfers be set aside, (c) recovering such Fraudulent Transfers in an amount to be determined from defendant for the benefit of the estate, and (d) recovering prejudgment and post-judgment interest, attorneys' fees, and costs from defendant;

6.      On Count VI – Fraudulent Transfers (Constructive Fraud), pursuant to 11 U.S.C. §§ 544(b), 550(a), 551, and Colo. Rev. Stat. § 38-8-105(1)(b) and § 38-8-106(1), (a) avoiding and preserving the Fraudulent Transfers free and clear from any claimed interest of defendant, (b) directing that the Fraudulent Transfers be set aside, (c) recovering such Fraudulent Transfers in an amount to be determined from defendant for the benefit of the estate, and (d) recovering prejudgment and post-judgment interest, attorneys' fees, and costs from defendant;

7.      On Count VII – Disallowance of Claims, pursuant to 11 U.S.C. § 502(d), an Order disallowing any claim of the Defendant against the Debtor;

8.      On Count VIII – Unjust Enrichment/Equitable Disgorgement, as against the Defendant, declaring and ordering that the Trustee shall recover all monies received by

25

Defendant, directly or indirectly, from the fraud perpetrated by the Debtor through the Debtor's

Companies, and that the Defendant shall be liable to the bankruptcy estate in an amount equal to

all monies received and shall be required to disgorge the same for the equitable distribution to

the creditors of the Debtor;

9.     On all claims for relief, awarding the Trustee all applicable interest (including

prejudgment and post-judgment interest), attorneys' fees, costs, and disbursements in this action;

and

10.     On all claims for relief, granting the Trustee such other, further, and different relief

as the Court deems just, proper, and equitable, including the establishment of a constructive trust

over the proceeds of the transfers identified herein.


Dated this 16th day of October, 2014.

                                        **LINDQUIST & VENNUM L.L.P.**

                                        By:    /s/ Kirstin D. Kanski
                                               John C. Smiley, #16210
                                               Kirstin D. Kanski, #0346676 (MN)
                                               Stephanie A. Kanan, #42437
                                        600 17th Street, Suite 1800 South
                                        Denver, Colorado 80202-5441
                                        Telephone: (303) 573-5900
                                        Facsimile: (303) 573-1956
                                        E-mail: jsmiley@lindquist.com
                                        E-mail: kkanski@lindquist.com
                                        E-mail: skanan@lindquist.com

                                        *Counsel for Harvey Sender, as Chapter 7 Trustee*

26

**Exhibit 1**

**American Express Credit Card Payment Detail**

| Date | Pmt Acct Name | Pmt Account Ending | Pre Petition | Post Petition | Grand Total |
|---|---|---|---|---|---|
| 6/1/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $3,000.00 | | $3,000.00 |
| 6/8/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $21,950.00 | | $21,950.00 |
| 6/20/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $7,000.00 | | $7,000.00 |
| 6/27/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $11,000.00 | | $11,000.00 |
| 7/1/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $9,184.36 | | $9,184.36 |
| 7/5/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $2,995.17 | | $2,995.17 |
| 7/7/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $4,000.00 | | $4,000.00 |
| 7/8/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $20,000.00 | | $20,000.00 |
| 7/11/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $16,222.17 | | $16,222.17 |
| 7/25/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $3,500.00 | | $3,500.00 |
| 8/1/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $14,378.59 | | $14,378.59 |
| 8/4/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $3,000.00 | | $3,000.00 |
| 8/8/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th | 6425 | $4,984.60 | | $4,984.60 |

| | | | | |
|---|---|---|---|---|
| | Ave Movers | | | |
| 8/11/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $6,921.67 | $6,921.67 |
| 8/12/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $5,466.20 | $5,466.20 |
| 8/15/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $600.00 | $600.00 |
| 8/22/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $2,453.36 | $2,453.36 |
| 8/25/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $10,000.00 | $10,000.00 |
| 8/29/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $2,490.00 | $2,490.00 |
| 9/2/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $10,000.00 | $10,000.00 |
| 9/12/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $3,967.76 | $3,967.76 |
| 9/19/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $452.36 | $452.36 |
| 9/20/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $1,800.00 | $1,800.00 |
| 9/23/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $2,409.32 | $2,409.32 |
| 9/26/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $10,000.00 | $10,000.00 |
| 9/30/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $2,390.80 | $2,390.80 |
| 10/7/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $2,439.54 | $2,439.54 |
| 10/12/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $6,000.00 | $6,000.00 |
| 10/13/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $1,157.63 | $1,157.63 |

28

| 10/14/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $2,438.91 | $2,438.91 |
| 10/17/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $5,000.00 | $5,000.00 |
| 10/20/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $2,439.54 | $2,439.54 |
| 10/24/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $2,631.66 | $2,631.66 |
| 10/28/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $1,780.22 | $1,780.22 |
| 10/31/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $900.00 | $900.00 |
| 11/14/2011 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $700.00 | $700.00 |
| 11/15/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $2,139.22 | $2,139.22 |
| 11/21/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $3,097.20 | $3,097.20 |
| 11/23/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $4,860.77 | $4,860.77 |
| 11/29/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $3,899.36 | $3,899.36 |
| 11/30/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $1,523.00 | $1,523.00 |
| 12/2/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $3,888.12 | $3,888.12 |
| 12/5/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $2,227.02 | $2,227.02 |
| 12/7/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $500.00 | $500.00 |
| 12/9/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $3,450.00 | $3,450.00 |
| 12/12/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $746.43 | $746.43 |
| 12/14/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $1,914.23 | $1,914.23 |
| 12/15/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $3,000.00 | $3,000.00 |
| 12/16/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $2,655.84 | $2,655.84 |
| 12/19/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $2,786.84 | $2,786.84 |
| 12/20/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $4,450.65 | $4,450.65 |
| 12/21/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $761.14 | $761.14 |
| 12/23/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $3,311.58 | $3,311.58 |
| 12/27/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $475.00 | $475.00 |
| 12/29/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $1,026.36 | $1,026.36 |
| 12/30/2011 | 67th Inc dba 67th Ave Logistics | 6440 | $2,645.22 | $2,645.22 |
| 1/3/2012 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $709.40 | $709.40 |

DOCS-#4369462-v1

| Date | Payee | Check# | | | |
|---|---|---|---|---|---|
| 1/10/2012 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $320.00 | | $320.00 |
| 1/12/2012 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $500.00 | | $500.00 |
| 1/17/2012 | 67th Inc dba Neighbors Moving dba F&S Moving dba 67th Ave Logistics dba 67th Ave Movers | 6425 | $2,363.00 | | $2,363.00 |
| 1/24/2012 | Nice Guy Movers of Orlando dba Neighbors Moving | 4411 | $600.00 | | $600.00 |
| 2/3/2012 | Nice Guy Movers of Orlando dba Neighbors Moving | 4411 | $300.00 | | $300.00 |
| 6/19/2012 | 67th Avenue Moving and Storage Inc dba Father and Sons Moving | 1541 | | $700.00 | $700.00 |
| 7/2/2012 | 67th Avenue Moving and Storage Inc dba Father and Sons Moving | 1541 | | $300.00 | $300.00 |
| 7/16/2012 | 67th Avenue Moving and Storage Inc dba Father and Sons Moving | 1541 | | $500.00 | $500.00 |
| 9/25/2012 | 67th Avenue Moving and Storage Inc | 5344 | | $9,995.03 | $9,995.03 |
| 11/6/2012 | 67th Avenue Moving and Storage Inc | 6097 | | $1,455.78 | $1,455.78 |
| | | | $259,804.24 | $12,950.81 | $272,755.05 |